UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SCOTT C. PECK and THAIS PECK,<br><br>    Plaintiffs,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC,<br>INDYMAC MORTGAGE<br>SERVICING, and FEDERAL<br>NATIONAL MORTGAGE<br>ASSOCIATION,<br><br>    Defendants. | Case No. 2:14-cv-12105-GER-<br>MJH<br><br>Hon. Gerald E. Rosen<br>Magistrate Judge Michael J.<br>Hluchaniuk<br><br>Removed from:<br>Oakland County Circuit Court<br>Case No. 2014-140379-NZ<br>Hon. Daniel P. O'Brien |

| | |
|---|---|
| GROVE AND ASSOCIATES, PC<br>Justin G. Grove (P71253)<br>28000 Woodward Avenue, Ste. 201<br>Royal Oak, MI 48067<br>(248) 744-5005<br>justin@daileylawyers.com<br><br>*Attorney for Plaintiffs* | DICKINSON WRIGHT PLLC<br>Ari M. Charlip (P57285)<br>Jerome Crawford (P76526)<br>2600 West Big Beaver Road, Ste. 300<br>Troy, MI  48084<br>(248) 433-7200<br>acharlip@dickinsonwright.com<br>jcrawford@dickinsonwright.com<br><br>*Attorneys for Defendants* |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**NOW COME** the Plaintiffs, Scott C. Peck and Thais Peck, by and through their

attorneys, Grove & Associates, PC and for their Response to Defendants' Motion to Dismiss

pursuant to Fed. R. Civ. P.12 (C). In support of their response Plaintiffs rely upon the reasons

stated herein and upon their brief:

1.  Admitted.

2. Admitted.

3. Denied for the reason the statement is untrue.

4. No response required.

5. Admitted.


Wherefore, Plaintiffs, respectfully request that this Honorable Court Deny Defendants'

Motion to for Summary Judgment and allow this matter to be determined upon the merits.


Respectfully submitted,

**GROVE & ASSOCIATES, PC**


/s/ Justin G. Grove
By: Justin G. Grove (P71253)
Attorney for the Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005


PROOF OF SERVICE

I certify that a copy of the above document was served
upon all counsel of record at their respective business
address as disclosed by the pleadings of record by:

| | |
|---|---|
| _____ US Mail 1st Class | _____ Facsimile |
| _____ US Mail Certified | _____ Overnight Del. |
| _____ Hand | __X__ E-filed |

On September 25, 2015

Debbie Smith

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT C. PECK and THAIS PECK,

    Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
INDYMAC MORTGAGE
SERVICING, and FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

Case No. 2:14-cv-12105-GER-MJH

Hon. Gerald E. Rosen
Magistrate Judge Michael J. Hluchaniuk

Removed from:
Oakland County Circuit Court
Case No. 2014-140379-NZ
Hon. Daniel P. O'Brien

---

GROVE AND ASSOCIATES, PC
Justin G. Grove (P71253)
28000 Woodward Avenue, Ste. 201
Royal Oak, MI 48067
(248) 744-5005
justin@daileylawyers.com

*Attorney for Plaintiff*

DICKINSON WRIGHT PLLC
Ari M. Charlip (P57285)
Jerome Crawford (P76526)
2600 West Big Beaver Road, Ste. 300
Troy, MI 48084
(248) 433-7200
acharlip@dickinsonwright.com
jcrawford@dickinsonwright.com

*Attorneys for Defendants*

---

## PLAINTIFFS' BRIEF IN RESPONSE TO DEFENDANT'S MOTION TO DISMISS

## INTRODUCTION

Curiously absent from Defendants' Motion and supporting brief is any mention, reasoning or explanation as to Plaintiffs' chief complaint against Defendants, that Plaintiffs were never delinquent on their monthly mortgage payment until Defendant Ocwen took over the loan

servicing and refused to accept their payments. When Defendant Ocwen assumed Plaintiffs' loan

they were under the mistaken belief that Plaintiffs were 90 days delinquent. Defendants' own

brief indicates the first delinquency occurred in September of 2013. Plaintiff's made the

September, October and November 2013 payments, as evidenced by the attached checks.

(**Exhibit** 1). Further, Plaintiffs produced evidence that Defendant Indymac actually took 2

payments from Plaintiffs' account in October 2013. Thus in reality, Plaintiffs were current on

their mortgage payment as they had been for the previous 13 years. Defendant Ocwen advised

Plaintiff's that the payments had not likely transferred over from their previous servicer,

Defendant Indymac. (**See Exhibit 2, Affidavits of Scott Peck and Thais Peck**).

Rather than resolving their mistake, Defendant Ocwen instead refused to accept any

further payments from Plaintiff, foreclosed upon the property and attempted to sell the property

at sheriff sale. The sheriff sale was halted as a result of this litigation and Defendant Ocwen

agreed to review Plaintiffs for a loan modification in order to rectify this situation. On June 4,

2014, Defendant Ocwen, began reviewing Plaintiffs' for a loan modification to resolve their

issues and retain their home. Plaintiffs have submitted each and every documents requested, yet

to this day, have not received any response to their loan modification request.

## STATEMENT OF FACTS

For over 13 years, Plaintiffs without fail made each and every mortgage payment as it

became due and but for the negligent mismanagement of Plaintiffs' payments by Defendants,

Plaintiffs would still be current. On or about January of 2014, the servicing of Plaintiffs'

mortgage was transferred from their original servicer, Defendant IndyMac to the new servicer

Defendant Ocwen. Plaintiffs received no notification of this transfer of serving and continued to

pay Indymac as they had always done.

In December of 2013 Plaintiffs were notified that their monthly mortgage payment to IndyMac had been rejected and returned. At the same time Plaintiffs began receiving phone calls from Defendant Ocwen, when Plaintiffs spoke with the Ocwen representative they were advised that Ocwen was their new servicer and that Plaintiffs were 3 months delinquents on their mortgage payment. (**Exhibit 2**). Plaintiffs advised numerous Ocwen representatives on numerous occasions that they were not delinquent and had in fact paid the September, October and November 2013 payments and that Defendant Indymac took 2 payments from their account in October of 2013. (**Exhibit** 2). Plaintiffs also supplied written evidence of the payments to Indymac in the form of bank statements.

Thereafter, Plaintiffs were advised that their file had not yet fully transferred to Ocwen from IndyMac and that a full review of their file would be completed in order to find the missing payments. However, Defendant Ocwen advised Plaintiffs that any mortgage payments that were sent in would be rejected given Ocwen's belief that the loan was delinquent. Plaintiffs were in constant contact with the Ocwen representative Stacey Hanson who advised that no foreclosure or other action would be taken while the file was being reviewed and while Ocwen attempted to locate the lost payments. (**Exhibit 2**).

Despite these representations, Ocwen did "dual track" Plaintiffs' mortgage and continued the foreclosure process while allegedly "reviewing" Plaintiffs' loan file and attempting to locate the missing payments. After months of no progress, Plaintiffs did contact Defendant FNMA and were advised by Housing Counselor Angel Santiago Jr., that their "information had been sent to Fannie Mae's Inquiry Management. They will open a case and research the payment issue for you." (**Exhibit 3**). Unfortunately, Plaintiffs would receive no further information from Defendant Fannie Mae and instead foreclosure proceedings were instituted and a sheriff sale was scheduled

for April 28, 2014.

Despite the fact that Plaintiffs provided proof of the September, October, November and the double payment in October, Defendant Ocwen refused to credit Plaintiffs' account for said payments. To this day, despite evidence of the September, 2 October payments and the November 2013 payments being made and cashed, Defendant Ocwen still claims that Plaintiffs are delinquent for those months. Defendants' own brief alleges that "Plaintiffs defaulted on their loan in or around September 2013". Defendants and their counsel make this allegation despite the fact they have been provided with evidence proving Plaintiffs actually made the September 2013 payment along with the 2 payments in October and the November 2013 payment. (**Exhibit 1**).

Despite the promises to find the missing mortgage payments and to correct the errors in Plaintiffs' account, neither Defendant Ocwen nor Defendant FNMA ever did as they promised and instead of correcting the mistake, Defendants simply chose to proceed with the foreclosure and sheriff sale of Plaintiffs' property. Again, prior to the transfer of the mortgage servicing from Defendant IndyMac to Defendant Ocwen, Plaintiffs had never been delinquent on their mortgage obligation. If not for the incompetence of Defendants' and their failure to properly account for Plaintiffs' payments, Plaintiffs would be current on their mortgage and would not be in danger of losing their home and all the money they have invested into the property.

## ARGUMENT

### A. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The

inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, 477 U.S. 242, 251-252 106 S.Ct. 2505, 2512 (1986). The moving party bears the burden of demonstrating the absence of all genuine issues of any material fact. Gregg v. Allen Bradley Co., 801 F.2d 859, 861 (6th Cir. 1986). The court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). If reasonable minds could disagree about the conclusion to be drawn from the facts, a question for the fact finder exists." [Old Kent Bank v Sobczak, 243 Mich App 57, 63-64; 620 NW2d 663 (2000), quoting Henderson v State Farm Fire & Casualty Co, 460 Mich 348, 353; 596 NW2d 190 (1999).].

### B. Plaintiffs' Conversion Claims relate to Defendants' taking of Plaintiffs' mortgage payments and refusing to credit said payment and as such must survive.

Plaintiffs' claims for conversion arise from Defendants' taking of Plaintiffs' mortgage payment for the months of September, double October payments and November payment and Defendants refusal to credit Plaintiffs' for said payments. To this date, Defendants have been unable to account for these payments and failed to credit Plaintiffs for said payments. The payments were made by Plaintiffs and were to be credited towards the mortgage obligation. Further, there has been no explanation as to why 2 payments were taken from Plaintiffs' account by Defendant Indymac in October of 2013.

Defendants received the payments, accepted the payments, cashed the payment and failed to ever credit Plaintiffs' account. As such it is clear that Defendants have converted Plaintiffs' payments for their own use and benefit. As a result of this conversion of Plaintiffs' funds, Plaintiffs mortgage was placed into default and the home was put into foreclosure. Thus Plaintiffs can maintain an action for conversion against Defendants.

**C. Defendant Ocwen is a Debt Collector and as such Plaintiffs' have stated a valid claim for violations of the FDCPA.**

Defendants make the very broad assertion that no mortgage servicers are debt collectors and as such all servicers are exempt from liability under the FDCPA. This position, while not only incorrect, fails to fully recognize the distinction between a debt collector and creditor.

The distinction between a creditor and a debt collector lies precisely in the language of 1692a (6) (F) (iii). For an entity that did not originate the debt in question but acquired it and attempts to collect it, that entity is either a creditor or a debt collector <u>depending on the default status of debt at the time it was acquired</u>. *FTC v. Check Investors, Inc.,* 502 F3d 159, 171-173 (3d Cir 2003). The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlilngton v. Credit Acceptance Corp.,* 76 F3d 103, 106-108 (6th Cir. 1996); see also *Perry v. Stewart Title Co.,* 756 F. 2d 1197, 1208 (5th Cir. 1985).

Thus the fact that Defendant Ocwen is a loan servicer does not automatically exempt Defendant Ocwen from liability pursuant to the FDCPA. Rather the analysis is focused on the status of the loan when Defendant Ocwen received it. In this case, Defendant Ocwen believed the mortgage debt was in default and treated it as such by refusing to accept payments from plaintiffs. As Defendant Ocwen treated the loan as being in default upon its receipt, Defendant Ocwen became a debt collector and is subject to the FDCPA.

The case of *Bridge v. Ocwen Federal Bank, FSB,* 681F.3d at 359 (6th Cir. 2012), is a case Defendant Ocwen should be familiar with as they were the Defendant and it is nearly identical to the case at hand. In the *Bridge* case, the homeowner's mortgage transferred from the original servicer to Ocwen Loan Servicing, after the transfer, Ocwen failed to credit the

homeowner for a previous payment and claimed the homeowner was delinquent despite proof of the payment. This is nearly identical to the situation of the Plaintiffs at hand, again Plaintiffs' loan transferred from the original servicer to Defendant Ocwen and upon receipt of the loan Defendant Ocwen failed to properly credit Plaintiffs' payments and placed Plaintiffs in default.

The *Bridge* Court held that the definition of a debt collection includes mortgage servicers who treat a loan as if it were in default even when it is not. Thus the Court found Defendant Ocwen, a loan servicer, was a debt collector and was subject to the FDCPA. The *Bridge* decision clearly establishes that a debt that is merely alleged to be in default qualifies as a debt and is subject to the FDCPA. Under nearly identical facts, the *Bridge* Court held that Ocwen was a debt collector and was subject to the FDCPA, thus Defendant Ocwen in the case at hand must be held to be a debt collector and subject to the FDCPA. As such, Plaintiffs claims pursuant to the FDCPA are not subject to dismissal.

### D. Plaintiffs' Fraudulent Misrepresentation and Tortious Interference

Plaintiffs' claim for Fraud/Misrepresentation arise from Defendant Ocwen's representations that Plaintiffs were delinquent on their mortgage payments when in fact the payments had been made by Plaintiffs and accepted by Defendants. Defendants argue that Plaintiffs' Fraud and Tortious Interference claims are barred as Tort remedies are not available when the parties' relationship is governed by contract.

However, the existence of a contractual relationship does not altogether preclude a tort-based theory of recovery, but any such tort claim must rest upon a duty owed by the defendant to the plaintiff "that is separate and distinct from the defendant's contractual obligation". *Fultz v. Union-commerce Associates,* 470 Mich 460 (2004). In this case

Defendant Ocwen did establish a duty to Plaintiffs outside of the contract when Defendant Ocwen advised Plaintiffs that they would resolve the lost payment issues and then refused to accept payments from Plaintiffs. Defendant Ocwen placed Plaintiffs into their "loss mitigation" program then failed to follow through on their promise to resolve the lost payment issue or in the alternative, afford Plaintiffs a loan modification in order to resolve the alleged delinquency.

Defendant Ocwen did establish a new and distinct duty to Plaintiffs outside of the contract when Defendant Ocwen accepted government funding and voluntarily entered into the HAMP loan modification program. By entering into this program and accepting government funding Defendant Ocwen assumed new and distinct duties with regards to Plaintiffs. When Defendant Ocwen became an active member of the HAMP program it took on a duty to accept applications for loan modifications and award loan modifications to those homeowners who qualified under the HAMP guidelines. When Defendant Ocwen placed Plaintiffs into their "loss mitigation" program, Defendant established a new and distinct duty to Plaintiffs.

The original mortgage between the parties here did not subject Defendant Ocwen to any duty to entertain loan modification applications or approve such modifications. However, Defendant took on that new duty when it enrolled in the HAMP program and as a result of their own conduct, including placing Plaintiffs into loss mitigation status. Therefore, a fraud claim and tortious interference with a contract claim can be maintained by Plaintiffs against Defendant Ocwen as Defendant Ocwen assumed new duties to Plaintiffs which are separate and distinct from Defendant Ocwen's contractual obligations under the original contract.

Defendants next argue that Plaintiff's Fraud claim is barred as it was not pled with the

requisite specificity. Plaintiff's claims for Fraud in the inducement have been properly pled, in that representatives of Defendant Ocwen made written and oral representation to Plaintiffs that their loan was in default and that they had failed to pay the 09/01/13 through 12/01/13 mortgage payments and that their loan was delinquent as a result.

Thus Defendant made false statements regarding the status of Plaintiffs' mortgage, these statements were false as Plaintiffs made the mortgage payments for September through December 2013 and Defendant refused to credit said payments, wrongly placed Plaintiffs in default and refused to accept any further payments from Plaintiffs. Defendant Ocwen knew or should have known the statements were false when they were made. Defendant Ocwen made said representations with the intention that Plaintiffs rely on them, Plaintiff did in fact act in reliance on the promises by continuing to work with Defendant Ocwen to resolve the payment issue rather than filing suit.

Finally, Plaintiffs have clearly been damaged by Defendant Ocwen wrongfully placing them into foreclosure, refusing to credit Plaintiffs' payment and refusing to accept further payments from Plaintiffs. The wrongful acts of Defendant Ocwen served to create a foreclosure and sheriff sale in a situation where Plaintiffs never actually missed a single mortgage payment. The loss of Plaintiffs' home surely constitutes sufficient damage to maintain their causes of action.

### E. Plaintiffs have set forth a valid claim for Breach of the Covenant of Good Faith and Fair Dealing.

While Michigan does not recognize an independent tort claim for breach of the implied covenant of good faith and fair dealing, every contract in which performance is left to a party's discretion is subject to an implied covenant of good faith. *McLiechey v. Bristol West Ins. Co..*, 408 F. Supp. 2d 516, 522 (W.D. Mich. 2006); *Lowe's Home Centers Inc., v. LL et al,* 147 Fed. App'x 516, 523 (W.D. Mich. 2005). "Where the manner of performance under a contract is left

to the discretion of a party, that party may breach the contract by exercising its discretion in bad faith." *Lowes*, 147 Fed. App'x at 523-24.

Plaintiffs allege that Defendants breached their duty of good faith and fair dealing by refusing to credit Plaintiffs' account for payments made in the months of September, October, November and the additional payment in October, refusing to accept subsequent payments from Plaintiffs and by initiating foreclosure proceedings against Plaintiffs while Defendants Fannie Mae and Defendant Ocwen were "reviewing" the transfer problems with Plaintiffs' loan.

Defendants have provided no evidence to support a claim that they acted in good faith or provided any justification as to why they did not credit Plaintiffs' mortgage payments or as to why they failed to properly "review" and resolve this accounting issue.

Plaintiffs' claim of breach of the duty of good faith and fair dealing is dependent upon the existence of contractual duties, in this case it is clear there was a contract and that Defendants failed to carry out its duties under the contract.

**F.   Plaintiffs Slander of Title has been Sufficiently Pled and Should Not be Dismissed.**

Defendants argue that Plaintiffs' claim for slander of title is subject to dismissal as Plaintiffs cannot identify a false statement in any document relating to the subject property. Plaintiffs' Slander of Title claim is based on the false assertions by Defendants that Plaintiffs were in fact in default with regards to their mortgage obligation. Specifically, Defendants did publish a notice of foreclosure with regards to the subject property. (**Exhibit 4**). Said notice specifically stated "Default has been made in the conditions of a mortgage made by Scott C. Peck and Thais Peck, Husband and Wife, original mortgagor(s) to MICA Mortgage Corporation…" Again, Plaintiffs contend that they never missed a payment and as such were never in default. Thus Plaintiffs can identify a false statement made by Defendants and relating to the subject property or at a

minimum there exists an issue of fact as to the falsity of the statement.

### G. Plaintiffs' Breach of Contract Claim Must Survive as Defendants were First to Breach the Mortgage Agreement.

Defendants sole basis for the dismissal of Plaintiffs' breach of contract claim is that Plaintiffs were the first party to breach and as such no action can be maintained. Again, Plaintiffs did not breach the contract. In fact, Defendants were the first to breach the contract by failing to properly credit Plaintiffs' payments and directly caused Plaintiffs to default by refusing to accept further payments from Plaintiffs.

Defendants offer absolutely no evidence to support their claim that Plaintiffs were first to breach the mortgage. Defendants provide no affidavit from any employees to support their claim or rebut Plaintiffs' claims regarding the missing payments, no account history is provided and absolutely no reasons are provided to explain where these payments went to or why they were never applied. At a minimum, there surely exists a question of fact as to who breached the mortgage first and as such Plaintiffs' Breach of Contract claim cannot be dismissed.

### H. Plaintiffs' RESPA Claim Does Not Fail as a Matter of Law and Should Not be Dismissed.

Plaintiffs' RESPA claim arises primarily from Defendants' complete failure to provide Plaintiffs' with notice that their mortgage had been assigned from Defendant IndyMac to Defendant Ocwen. Obviously, Plaintiffs could not provide a Qualified Written Request to Ocwen because they had no idea that the loan had been assigned to Ocwen. 12 FR 1024.33 requires the transferor (Defendant IndyMac) and the transferee (Defendant Ocwen) to provide written notice to the borrowers (Plaintiffs) informing them of the change of servicers.

The notice is required to be in writing and is to be provided to the borrowers 15 days prior to the change in servicing. Plaintiffs did not receive any written notice that the servicing of

their mortgage was transferring from Defendant Indymac to Defendant Ocwen. As a result of Defendants failure to notify Plaintiffs, in writing, of the change in servicers, Defendants are in violation of RESPA. Defendants failure to comply with the RESPA notice requirements greatly damaged Plaintiffs as they had no idea who to contact regarding their loan and it appears payments were misapplied as a result. The damages to Plaintiffs in this case are fairly obvious, had Defendants properly effectuated the assignment/transfer of Plaintiffs' loan, Plaintiffs would never have been placed in default, there home would not be subject to foreclosure and sheriff sale and they would be current on their mortgage obligation.

**I.   Plaintiff's Count XII is withdrawn.**

Defendants have provided sufficient evidence indicating a proper assignment was filed with the register of deeds and as such Plaintiffs' count XII is voluntarily withdrawn.

**J.   Plaintiffs have properly set forth a claim to set aside any sheriff sale of the property and as such Count XI should survive.**

Defendants argue that loan was in default and as such they were entitled to foreclosure upon the property and subject it to sheriff sale. Again, Plaintiffs contend that there loan was not in default until Defendant Ocwen wrongfully refused to accept payments from Plaintiffs. It should be noted that currently the property has not actually gone to sheriff sale as <u>Defendant Ocwen is still reviewing Plaintiffs for a loan modification, a review that has been ongoing for over 15 months without a determination.</u>

However, should Defendants abandon the loan modification review or fail to ever provide a response, Plaintiffs have pled sufficient grounds to invalidate any sheriff sale of the subject property. Plaintiffs can and have demonstrated the requisite fraud or irregularity with regards to the foreclosure process, said fraud or irregularity sufficiently touches the foreclosure process and

as such is sufficient to set aside any sheriff sale of Plaintiffs' property.

Here Plaintiffs maintain standing to challenge the foreclosure as said foreclosure was ripe with fraud and irregularity. Again, the default that led to the foreclosure was created solely by Defendants failure to properly credit Plaintiffs mortgage payments. It is highly irregular that a servicer, who's only job is to collect payments, could somehow lose Plaintiffs' payments and fail to credit said payments. This unexplained action and violation of the mortgage agreement directly led to Defendant Ocwen refusing Plaintiffs' payments and sent the loan into default.

Defendants' assertion that Plaintiffs cannot show any prejudice as a result of the frauds and irregularities perpetrated by Defendants is absurd.  To demonstrate the prejudice required to set aside a sale, a borrower "must show that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance." *Kim v. JP Morgan Chase*, 493 Mich 98, 115-116 (2012).  Clearly Plaintiffs would have been in a better position to preserve their property had Defendants properly applied/credited their mortgage payments and not refused to accept Plaintiffs' subsequent payments. Plaintiffs would have been in a far better position to preserve their property had Defendants not created a wrongful default and stopped accepting Plaintiffs' mortgage payments.  Had Defendant Ocwen simply allowed Plaintiffs to continue making their mortgage payment and properly accounted for previous payments, no foreclosure would have ever gone forward and Plaintiffs would still be making their mortgage payment as agreed.

## **CONCLUSION**:

As demonstrated by the arguments above it is clear that there remain numerous issue of fact to be determined in this case. Defendants fail to explain or even address the key issues in this case and to this day have offered absolutely no evidence to rebut Plaintiffs' assertion that

they had timely made all their mortgage payments until Defendant Ocwen refused to accept

Plaintiffs' payments. Plaintiffs respectfully request that this Court deny Defendants' Motion for

Summary Disposition as to all counts, and allow this matter to be decided based on the merits.

Respectfully submitted,

**GROVE & ASSOCIATES, PC**

*/s/ Justin G. Grove*
By: Justin G. Grove (P71253)
Attorney for the Plaintiff
28000 Woodward Ave., Ste 201
Royal Oak, MI 48067
248.744.5005



Apr. 28. 2014 12:36PM                                   No. 6521   P. 3/5

**STATE ■ BANK**   PO Box 725
                   Fenton, MI 48430-0725
*your financial partner for life*   Toll Free: 810.629.2263
www.TheStateBank.com

Account Number:        Statement Date:
xxxxx                  Sep 30, 2013

EXHIBIT
1

## Checks:

| Date | Check Number | Amount | Date | Check Number | Amount |
|------|--------------|--------|------|--------------|--------|
| 09/20 | 3701 | $200.00 | 09/25 | 3705 | $300.00 |
| 09/23 | 3702* | $35.00 | 09/25 | 3706 | $100.00 |
| 09/23 | 3704 | $200.00 | 09/10 | 3707 | $200.00 |

(*) Indicates a Gap in Check Number Sequence

## Other Debits:

| Date | Description | Amount |
|------|-------------|--------|
| 09/03 | ONEWEST BANK MTG PYMT 1001562360 | $1,414.22 |
|  |  | $34.48 |
| 09/03 | CHECK # 3684 - WAL-MART STORES PURCHASE 3684 FENTMI | $34.14 |
| 09/04 | CHECK # 3689 - WAL-MART STORES PURCHASE 3689 WHITMI | $128.23 |
| 09/10 | CHECK # 3698 - WAL-MART STORES PURCHASE 3698 FENTMI | $118.93 |
| 09/13 | CHECK # 3700 - RITE AID 03497 PURCHASE 3700 HOLLMI | $38.96 |
| 09/24 | CHECK # 3703 - PRESIDENT TUXEDO PURCHASE 3703 LAKEMI | $74.99 |

## Daily Balance:

| Date | Amount | Date | Amount | Date | Amount | Date | Amount |
|------|--------|------|--------|------|--------|------|--------|
|  |  |  |  |  |  | 09/26 | $897.88 |

*September 2013*

THE STATE BANK
PO BOX 725
FENTON MI 48430

ACCOUNT:
DOCUMENTS:                    0

PAGE:    2
10/31/2013

TELEPHONE:

PECK CONTRACTING, LLC

```
============================================================
            FREE BUSINESS CKG ACCOUNT 4616693
============================================================
```

- - - - - - - - OTHER DEBITS - - - - - - - -

| DESCRIPTION | DATE | AMOUNT |
|---|---|---|
| ATT Payment          SMT2J | 10/29 | 34.51 |
| CONSUMERS ENERGY ENERGYBILL          4444 | 10/29 | 100.20 |
| CHECK # 3689 - WAL-MART STORES PURCHASE 3689 WHITMI | 10/08 | 271.31 |
| CHECK # 3696 - KMART PURCHASE 3696 WATEMI | 10/22 | 12.31 |

- - - - - - - - DAILY BALANCE - - - - - - - -

| DATE | BALANCE | DATE | BALANCE | DATE | BALANCE |
|---|---|---|---|---|---|
| 10/01 | 1,822.47 | 10/10 | 179.78 | 10/23 | 462.47 |
| 10/02 | 1,131.09 | 10/11 | 15.78 | 10/25 | 212.47 |
| 10/03 | 931.09 | 10/14 | 1,473.78 | 10/28 | 2,598.47 |
| 10/04 | 681.09 | 10/16 | 773.78 | 10/29 | 1,663.76 |
| 10/07 | 301.09 | 10/18 | 1,473.78 | 10/30 | 1,413.76 |
| 10/08 | 29.78 | 10/21 | 923.78 | | |
| 10/09 | 929.78 | 10/22 | 662.47 | | |

*October 2013*

## The STATE S BANK

*your financial partner for life*
www.TheStateBank.com

PO Box 725
Fenton, MI 48430-0725
Toll Free: 810.629.2263
Address Service Requested

Member **FDIC**  EQUAL HOUSING LENDER

| Account Number: | | Statement Date: |
| --- | --- | --- |
| ████████ | | Nov 29, 2013 |
| **Summary at a Glance:** | | |
| Balance: | | ████ |
| Total Debits: | | $14,888.52 |

Page 1 of 2

00153

|||||||||||||||||||||||||||||||||||||||||||||||||

PECK CONTRACTING, LLC
████████4
HOLLY MI ████████

**Mobile Deposit is here!**
*Download the app.*
*Snap a photo.*
*Deposit your check.*
*Easy as 1-2-3!*
Member FDIC
mobile deposit
The State Bank

*November 2013 payment*

## Summary of Accounts:

| Account | Minimum Balance | Average Available Balance |
| --- | --- | --- |
| FREE BUSINESS CKG | $-1,295.15 | $108.64 |

| Last Statement | Balance | Credits | Debits | This Statement | Balance |
| --- | --- | --- | --- | --- | --- |
| 10/31/2013 | $1,413.76 | $19,274.82 | $14,888.52 | 11/29/2013 | $5,800.06 |

### Deposits:

| Date | Ref# | Amount | Date | Ref# | Amount |
| --- | --- | --- | --- | --- | --- |
| 11/07 | | $6,325.00 | 11/22 | | $700.00 |
| 11/13 | | $1,500.00 | 11/29 | | $550.00 |
| 11/18 | | $450.00 | 11/29 | | $5,900.00 |
| 11/18 | | $500.00 | | | |

### Other Credits:

| Date | Descri... |
| --- | --- |

### Checks:

| Date | Check Number | Amount | Date | Check Number | Amount |
| --- | --- | --- | --- | --- | --- |
| 11/08 | * | $1,409.82 | | | |

*Nov payment*

(*) Indicates a Gap in Check Number Sequence



EXHIBIT

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT C. PECK and THAIS PECK,

    Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
INDYMAC MORTGAGE
SERVICING, and FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

Case No. 2:14-cv-12105-GER-
MJH

Hon. Gerald E. Rosen
Magistrate Judge Michael J.
Hluchaniuk

Removed from:
Oakland County Circuit Court
Case No. 2014-140379-NZ
Hon. Daniel P. O'Brien

---

GROVE AND ASSOCIATES, PC
Justin G. Grove (P71253)
28000 Woodward Avenue, Ste. 201
Royal Oak, MI 48067
(248) 744-5005
justin@daileylawyers.com

*Attorney for Plaintiffs*

DICKINSON WRIGHT PLLC
Ari M. Charlip (P57285)
Jerome Crawford (P76526)
2600 West Big Beaver Road, Ste. 300
Troy, MI  48084
(248) 433-7200
acharlip@dickinsonwright.com
jcrawford@dickinsonwright.com

*Attorneys for Defendants*

---

## AFFIDAVIT OF SCOTT C. PECK

I, Scott C. Peck, do hereby swear and affirm as follows:

1. I have personal and first-hand knowledge of the facts and circumstances surrounding the instant matter.

2. I made all the mortgage payments for my home for the year of 2013.

3. In October of 2013, Indymac took 2 mortgage payments from my bank account when

only one payment was due.

4.  In early 2014 I was advised by Ocwen Loan servicing that my mortgage was assigned to them and that Ocwen believed my mortgage was 3 months delinquent.

5.  Ocwen advised that no mortgage payment had been received since September 2013.

6.  I told the Ocwen representative that I had made all the mortgage payments in 2013 and provided them with a copy of the payments.

7.  An Ocwen representative advised that because the loan was in default status, they would not accept any further payments from me.

8.  Until Ocwen refused to accept my mortgage payments, I had not missed a mortgage payment.

FURTHER AFFIANT SAYETH NOT.

Scott C. Peck

Subscribed and sworn to before me
on the 24th day of September, 2015.

Debra K Smith
Notary Public:

Oakland County, Michigan, acting in Oakland County, Michigan
My Commission Expires:

DEBRA K SMITH
Notary Public - Michigan
Macomb County
My Commission Expires Jun 22, 2020
Acting in the County of Oakland

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SCOTT C. PECK and THAIS PECK,

    Plaintiffs,

v.

OCWEN LOAN SERVICING, LLC,
INDYMAC MORTGAGE
SERVICING, and FEDERAL
NATIONAL MORTGAGE
ASSOCIATION,

    Defendants.

Case No. 2:14-cv-12105-GER-MJH

Hon. Gerald E. Rosen
Magistrate Judge Michael J. Hluchaniuk

Removed from:
Oakland County Circuit Court
Case No. 2014-140379-NZ
Hon. Daniel P. O'Brien

---

GROVE AND ASSOCIATES, PC
Justin G. Grove (P71253)
28000 Woodward Avenue, Ste. 201
Royal Oak, MI 48067
(248) 744-5005
justin@daileylawyers.com

*Attorney for Plaintiffs*

DICKINSON WRIGHT PLLC
Ari M. Charlip (P57285)
Jerome Crawford (P76526)
2600 West Big Beaver Road, Ste. 300
Troy, MI 48084
(248) 433-7200
acharlip@dickinsonwright.com
jcrawford@dickinsonwright.com

*Attorneys for Defendants*

---

### AFFIDAVIT OF THAIS PECK

I, Thais Peck, do hereby swear and affirm as follows:

1. I have personal and first-hand knowledge of the facts and circumstances surrounding the instant matter.

2. All of our mortgage payments for our home for the year of 2013 were made.

3. In October of 2013, Indymac took 2 mortgage payments from my bank account when

only one payment was due.

4.  I spoke with Ocwen representatives on numerous occasions and advised them we were

    not delinquent and I provided Ocwen with bank statements showing the mortgage

    payments were made.

5.  I was in continual contact with Ocwen and was told numerous times that they would find

    the missing mortgage payments and fix the problem.

6.  Until Ocwen refused to accept my mortgage payments, I had not missed a mortgage

    payment.

FURTHER AFFIANT SAYETH NOT.

_____
Thais Peck

Subscribed and sworn to before me

on the 24th day of September, 2015.

_____
Notary Public:

Oakland County, Michigan, acting in Oakland County, Michigan

My Commission Expires:

DEBRA K SMITH
Notary Public · Michigan
Macomb County
My Commission Expires Jun 22, 2020
Acting in the County of Oakland



**From:** Santiago Jr., Angel (Contractor) <angel_santiago_jr@fanniemae.com>
**To:** 'T████████████ <TPECK3██████.COM>
**Subject:** Documents
**Date:** Wed, Feb 26, 2014 4:00 pm

Good Afternoon,

I wanted to let you know that I've send your information to Fannie Mae's Inquiry Management. They will open a case and research the payment issue for you. They will make contact with you regarding any questions they may have about the situation.

Thanks again,

**Angel Santiago, Jr.**
Housing Counselor
Philadelphia - Fannie Mae Mortgage Help Center
399 Franklin Mills Circle
Philadelphia, PA 19154
(P) 866-442-8570 x1800
(F) 866-442-6291
(E) angel_santiago_jr@fanniemae.com

This e-mail and its attachments are confidential and solely for the intended addressee(s). Do not share or use them without Fannie Mae's approval. If received in error, contact the sender and delete them.

EXHIBIT
4



## 3271 W Rattalee Lake Rd, Holly, MI 48442

TROTT & TROTT, P. C. Attorneys and Counselors 31440 Northwestern Highway, Suite 200 Farmington Hills, Michigan 48334-2525 THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY. ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest. MORTGAGE SALE - Default has been made in the conditions of a mortgage made by Scott C. Peck and Thais Peck, Husband and Wife, original mortgagor(s), to MICA Mortgage Corporation, Mortgagee, dated June 14, 2001, and recorded on July 20, 2001 in Liber 23304 on Page 326, and assigned by mesne assignments to Ocwen Loan Servicing, LLC as assignee as documented by an assignment, in Oakland county records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Forty-Eight Thousand Six Hundred Thirty-Three and 51/100 Dollars ($248,633.51). Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public venue, at the place of holding the circuit court within Oakland County, at 10:00 AM, on April 29, 2014. Said premises are situated in Township of Rose, Oakland County, Michigan, and are described as: Parcel 1, Part of the Southeast 1/4 of Section 4, Town 4 North, Range 7 East, Rose Township, Oakland County, Michigan, Described as beginning at point distant North 89 degrees 55 minutes 56 seconds East, 233.34 Feet from the South 1/4 corner of Section 4; thence North 00 degrees 16 minutes 44 seconds West, 656.99 Feet; thence North 89 degrees 37 minutes 35 seconds East 651.54 Feet; thence South 00 degrees 16 minutes 40 seconds West, 666.38 Feet thence South 89 degrees 55 minutes 56 seconds West 451.54 Feet, to the point of beginning. Reserving the Southerly 33 Feet to the Right of the Public in Rattalee Lake Road. The redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale. If the property is sold at foreclosure sale under Chapter 32 of the Revised Judicature Act of 1961, pursuant to MCL 600.3278 the borrower will be held responsible to the person who buys the property at the mortgage foreclosure sale or to the mortgage holder for damaging the property during the redemption period. Dated: March 26, 2014 For more information, please call: FC S (248) 593-1304 Trott & Trott, P.C. Attorneys For Servicer 31440 Northwestern Hwy Ste 200 Farmington Hills, Michigan 48334-5422 File #313964F03 (03-26)(04-16)