UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SCOTT C. PECK and
THAIS PECK,

    Plaintiffs,

v.                                                                            Case No. 14-12105

OCWEN LOAN SERVICING, LLC,                  HON. AVERN COHN
INDYMAC MORTGAGE SERVICING, and
FEDERAL NATIONAL MORTGAGE ASSOCIATION,

    Defendants.

_____/

## **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 45)**

### I.    INTRODUCTION

This is an FDCPA case. Plaintiffs Scott C. Peck and Thais Peck (Plaintiffs) are suing Defendants Ocwen Loan Servicing, LLC (Ocwen), IndyMac Mortgage Servicing (Indymac), and Federal National Mortgage Association (Fannie Mae). Plaintiffs say they were not notified that their mortgage was assigned from Indymac to Ocwen, which caused them to make payments to the incorrect mortgage servicer for four months. Plaintiffs also say they informed Ocwen that they had made the four payments to Indymac, and that Ocwen failed to search for the missing payments after representing that it would do so. As a result, Plaintiffs became delinquent on the loan and Defendants

instituted foreclosure proceedings and scheduled a sheriff sale. Plaintiffs claim that Defendants have committed the following violations:

- Count I: Statutory Conversion
- Count II: Common Law Conversion
- Count III: Violation of Federal Debt Collection Practices Act (FDCPA), codified at 15 U.S.C. §§ 1692f(1), 1692d, 1692d(5), 1692e, 1692e(2), 1692e(10)
- Count IV: Fraud/Misrepresentation
- Count V: Breach of Covenant of Good Faith and Fair Dealing
- Count VI: Slander of Title
- Count VII: Breach of Mortgage Agreement
- Count VIII: Tortious Interference with a Contract
- Count IX: Violation of Real Estate Settlement Procedures Act (RESPA), codified at 12 C.F.R. § 1024.33, 12 U.S.C. § 2605(e)(2)(C)(i), 24 C.F.R. § 3500.21(e)(3)(ii)(B), 15 U.S.C. § 1639(j), 15 U.S.C. § 1640(a)(4), 12 U.S.C. § 2607(d)
- Count X: Violations of Michigan Foreclosure Laws
- Count XI: Relief from Sheriff Sale and/or Set Aside Foreclosure
- Count XII: Quiet Title
- Count XIII: Declaratory and Injunctive Relief

In their response brief (Doc. 47), Plaintiffs voluntary withdraw Counts VIII, X, and XII. Plaintiffs seek actual damages, statutory damages, punitive damages, injunctive relief, declaratory relief, and costs and attorney's fees. Plaintiffs also ask the Court to set aside the foreclosure and sheriff sale.

Defendants have moved for summary judgment (Doc. 45), and both parties have submitted a joint statement of material facts (Doc. 51).

For the reasons that follow, Defendants' motion for summary judgment is GRANTED.

## II. BACKGROUND

### A. Mortgage

In 2001, Plaintiffs borrowed $243,000.00 from MICA Mortgage Corporation (MICA) and secured the loan with a mortgage on real property located at 3271 Rattalee

2

Lake Road, Rose Township, Michigan 48442 (Doc. 45, Exhibits A-B). MICA immediately assigned the mortgage and accompanying note (Mortgage) to IndyMac. IndyMac assigned the Mortgage to OneWest Bank, FSB (OneWest)[1] in 2010, and OneWest assigned it to Ocwen in 2013 (Doc. 45, Exhibit C).

### B. Default and Foreclosure

While the parties discuss Plaintiffs' payment history since 2007, only activity occurring in 2013 is relevant to the current claims. In the year 2013, Ocwen's business records (which include records from IndyMac) reflect that Plaintiffs made monthly payments to IndyMac in January, February, and March.[2] IndyMac applied each payment to the balance due from the previous month, so the March 2013 payment satisfied Plaintiffs' obligations through February 2013. The records show that Plaintiffs' next payment was made in May 2013, which IndyMac applied to the balance due in March 2013. IndyMac also received two payments from Plaintiffs in July 2013. One of these was close to double the normal amount, so the July payments were enough to cover Plaintiffs' obligations for April, May, and June 2013. IndyMac later received a payment in August 2013, which it applied to Plaintiffs' July 2013 balance.

On August 12, 2013, IndyMac and Ocwen sent Plaintiffs a letter informing them that Ocwen would become the loan servicer as of September 1, 2013 (Doc. 45, Exhibit I). Plaintiffs deny receiving this letter (Doc. 1, Exhibit A, ¶ 12). Plaintiffs made a payment to IndyMac in November 2013, which IndyMac forwarded to Ocwen (Doc. 45, Exhibit D, ¶ 23). Ocwen applied this payment to Plaintiffs' August 2013 balance (Id., ¶ 24). On

---

[1] IndyMac is a subsidiary of OneWest (Doc. 45, Exhibit D, ¶ 11).
[2] *See* Appendix for a tabular display of Plaintiffs' mortgage payments in 2013.

November 4, 2013, Ocwen informed Plaintiffs in writing that their account was past due in the amount of $4,835.71, which they must pay within 35 days in order to avoid foreclosure (Doc. 45, Exhibit J). Plaintiffs admit receiving this letter (Doc. 51, ¶ 16). Because Plaintiffs did not pay the past due amount, the loan was accelerated and referred for foreclosure on February 17, 2014 (Doc. 45, Exhibit K). The foreclosure sale has not yet been completed. A sheriff's sale was scheduled for April 28, 2014; it has not taken place.

### C. Plaintiffs' Dispute

Plaintiffs say they did not learn about the assignment of the Mortgage from Indymac to Ocwen until January 2014, when they were notified that their most recent payment to Indymac had been rejected and returned (Doc. 1, Exhibit A, ¶ 13; Doc. 47, Exhibit 6). Around the same time, Plaintiffs say Ocwen contacted them by phone to notify them that they were four months delinquent on their payments (Doc. 47, p. 5, ¶¶ 4-5).

Plaintiffs say they provided written evidence to Ocwen that they had not missed any payments from September through December 2013 (Doc. 47, p. 5, ¶ 6; Doc. 47, Exhibit 4, p. 2, ¶ 3). Because of this, Plaintiffs conclude that Defendants must have refused or otherwise failed either to appropriately transfer the payments from IndyMac to Ocwen, or to appropriately credit Plaintiffs' account. Plaintiffs also say Ocwen represented to them that Ocwen would review their file to find the missing payments since their file had not fully transferred to Ocwen from Indymac (Doc. 47, Exhibit 4, p. 2, ¶ 4), that Ocwen would reject any future payments Plaintiffs sent since the loan was

4

more than 90 days delinquent (Doc. 47, p. 5, ¶ 7), and that Ocwen would not institute foreclosure proceedings while investigating the matter (Doc. 1, Exhibit A, ¶ 18).

Plaintiffs also contacted Fannie Mae, which told Plaintiffs that it would open a case and research the lost payments issue (Doc. 1, Exhibit A; Doc. 47, Exhibit 5).

Plaintiffs say that in February 2014, after receiving no further information from Ocwen or Fannie Mae, Plaintiffs learned that foreclosure proceedings had been instituted against the property and a sheriff sale scheduled for April 28, 2014 (Doc. 1, Exhibit A, ¶ 21; Doc. 47, Exhibit 6). Plaintiffs wrote a Qualified Written Request (*see* 12 U.S.C. § 2605(e)) to Ocwen dated February 19, 2014, but they never received a response from Ocwen (Doc. 47, Exhibit 6). Ocwen denies receiving the request (Doc. 45, Exhibit D, ¶ 13).

### D. Procedural History

Plaintiffs filed a complaint in the Oakland County Circuit Court on April 23, 2014 (Doc. 1, Exhibit A). Defendants filed a notice of removal on May 27, 2014 (Doc. 1) and an amended notice of removal on November 16, 2016 (Doc. 37). The case was reassigned from District Judge Gerald E. Rosen on December 27, 2016.

### III.  LEGAL STANDARD

Summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." *Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc.*, 69 F.3d 98, 101-02 (6th Cir. 1995).

## IV.   DISCUSSION

### A.   Counts I and II – Conversion

Michigan common law defines conversion as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391 (1992). Additionally, Michigan law prohibits "[a]nother person's stealing or embezzling property or converting property to the other person's own use" and "[a]nother person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person . . . knew that the property was stolen, embezzled, or converted." Mich. Comp. Laws § 600.2919a(1)(a)-(b).

Plaintiffs argue that Defendants committed conversion by refusing to credit Plaintiffs' account for the payments they made in 2013. However, a tort claim cannot stem from a breach of contract unless "the plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Const. Corp. v. Michigan Bell Tel. Co.*, 454 Mich. 65, 84 (1997). Plaintiffs have not alleged that accepting and properly crediting mortgage payments is a different legal duty than the one Defendants were already obligated to perform under the terms of the Mortgage. Furthermore, conversion of money is only possible if a defendant was obligated to

6

return the money to the plaintiff. *Globe & Rutgers Fire Ins. Co. of New York v. Fisher*, 234 Mich. 258, 260-61 (1926). *See also Garras v. Bekiares*, 315 Mich. 141, 147-49 (1946); *Dunn v. Bennett*, 303 Mich. App. 767, 778 (2013). Because that is also not the case here, Plaintiffs' conversion claims fail as a matter of law.

Even assuming *arguendo* that Plaintiffs could sustain a conversion claim, they still would not survive summary judgment. The bank records Plaintiffs offer as their sole means of proof only show that they made eight payments in 2013. The August 2013 statement shows a check payment, but it does not display the check recipient and contains no other information that would connect the check to IndyMac. The May 2013 statement shows two check payments that not only display no recipient, but also fail even to identify a check number. Not surprisingly, these three payments are the ones that do not appear in the Ocwen/IndyMac payment records for Plaintiffs' account. All other mortgage payments in Plaintiffs' bank records include either the name IndyMac or the Plaintiffs' IndyMac account number, clearly identifying IndyMac as the recipient of the payment.

Plaintiffs have not provided evidence of a December 2013 payment, and Ocwen's records do not display any payments after November 2013. Additionally, Plaintiffs display a canceled check as evidence of a payment in October 2013; however, this is the same check Ocwen received and credited to Plaintiffs' account in November 2013. Plaintiffs' account therefore should have been credited through August 2013, which is exactly what Ocwen's November 4, 2013 letter indicates by stating that Plaintiffs' account defaulted starting in September 2013. Aside from bank statements,

Plaintiffs offer only bare assertions that they made all payments in 2013. This is not sufficient to overcome summary judgment.

Finally, Plaintiffs' argument that "there are issues with Defendants [sic] accounting system" regarding the July 2013 payment has no merit. Plaintiffs claim that Ocwen has "no record" of that payment, but Ocwen's records clearly show receipt of the payment on July 29, 2013. It was Plaintiffs' submissions that showed "no record" of the payment.

### B.     Counts III-VII – FDCPA, Fraud, Breach of Covenant of Good Faith and Fair Dealing, Slander of Title, Breach of Mortgage Agreement

Because Plaintiffs have only shown that they made eight mortgage payments in 2013, their claims also fail on Counts III-VII. Assuming without deciding that these counts represent valid causes of action, Plaintiffs have offered no evidence to suggest that Defendants misrepresented the amount past due, attempted to collect an incorrect amount, or otherwise acted inappropriately or in bad faith.

Plaintiffs argue that Ocwen acted in bad faith by foreclosing while still reviewing their file, but Plaintiffs forfeit this argument by admitting that they received the letter Ocwen sent on November 4, 2013. That letter put Plaintiffs on notice that they were delinquent on the loan and that Ocwen would foreclose if it did not receive payment of the past due amount within 35 days, which was Ocwen's right under the Mortgage contract (Doc. 1, Exhibit C, ¶ 22). After not receiving any payments in the 35-day period, Ocwen was entitled to stop accepting payments and foreclose on the property. The fact that Plaintiffs received the foreclosure notice letter undermines their previous assertion that they did not know about Ocwen's involvement until January 2014, after which they

8

requested that Ocwen review the account for "missing" payments. Any review of the account would have revealed nothing other than what Ocwen had already told Plaintiffs, which is that Plaintiffs did not make twelve payments to Indymac in 2013. Since Plaintiffs have been unable to demonstrate otherwise, they cannot survive summary judgment on these counts.

### C.     Count IX – RESPA

The RESPA implementing regulation provides that "each transferor servicer and transferee servicer of any mortgage servicing loan shall deliver to the borrower a written Notice of Transfer" at least 15 days before the transfer takes place. 24 C.F.R. § 3500.21(d). *See also* 12 U.S.C. § 2605(b). Plaintiffs argue that Defendants violated this provision because Plaintiffs never received the August 12, 2013 letter indicating that IndyMac was going to assign the Mortgage to Ocwen. However, the Mortgage contract provides that notices are deemed as given to the borrower when they are mailed, not when they are received by the borrower (Doc. 1, Exhibit C, ¶ 15). *See Decker v. Servis One, Inc.*, No. 1:15-CV-1170-RP, 2017 WL 61965, at *5 (W.D. Tex. Jan. 5, 2017) (Deed of Trust provided that notices were received upon mailing). Since Defendants have provided evidence that the letter was mailed (Doc. 45, Exhibit D, ¶¶ 12-13), Plaintiffs cannot succeed on this claim.

Plaintiffs' argument that Defendants violated 12 U.S.C. § 2605(e)(2)(C) by not responding to Plaintiffs' February 19, 2014 Qualified Written Request (QWR) (Doc. 47, Exhibit 6) also cannot succeed because Plaintiffs do not show damages. RESPA allows a plaintiff to recover actual damages, and also provides for statutory damages if a defendant exhibits "a pattern or practice of noncompliance." 12 U.S.C. § 2605(f)(2).

Here, Plaintiffs incorrectly argue that Defendants' actions caused the loan default, the initiation of foreclosure proceedings, and the scheduling of a sheriff's sale. Assuming that Defendants had an obligation to respond to Plaintiffs' QWR, their failure to do so could not have caused Plaintiffs' damages since the QWR was written after the damages had already occurred. Rather, it was Plaintiffs' failure to pay their mortgage payments that caused their damages. *See Martini v. JPMorgan Chase Bank, N.A.*, 634 F. App'x 159, 164 (6th Cir. 2015) (RESPA violation did not cause foreclosure). Additionally, since Plaintiffs have not shown or even alleged a pattern or practice of behavior, they have no claim for statutory damages. Absent the requisite showing of damages, this claim also fails as a matter of law.

**D.     Counts XI and XIII – Sheriff Sale and Foreclosure; Declaratory and Injunctive Relief**

This Court cannot set aside a sale or foreclosure that has not yet occurred. Also, there is no question that Ocwen had the right to institute foreclosure proceedings on the Mortgage. Michigan law allows the "servicing agent of the mortgage" and the owner "of an interest in the indebtedness" to foreclose on a defaulted debt. Mich. Comp. Laws § 600.3204(1)(d). Plaintiffs do not dispute that Ocwen is the mortgage servicer, and Ocwen also possesses an interest in the Mortgage "whose existence is wholly contingent on the satisfaction of the indebtedness." *Residential Funding Co. v. Saurman*, 490 Mich. 909, 909 (2011). Thus, Plaintiff cannot overcome summary judgment on these counts.

## V. CONCLUSION

In sum, at the time of foreclosure Defendants had not received mortgage payments from Plaintiffs for the months of September, October, November, or December 2013. Because Plaintiffs were delinquent in making their mortgage payments, Defendants had the right to foreclose on their collateral. Therefore, Defendants are entitled to summary judgment on all counts.

SO ORDERED.

s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 10/13/2017

Detroit, Michigan